No. 82-397

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

SPROUL A. McGUINESS et al.,

                              Plaintiffs and Respondent,

        vs.

DONALD E. MAYNARD and LEWIS AND
CLARK COUNTY, MONTANA, a political
subdivision of the State of Montana,

                              Defendants and Appellants.

---

Appeal from:  District Court of the First Judicial District,
              In and for the County of Lewis and Clark
              Honorable Gordon Bennett, Judge presiding.

Counsel of Record:

        For Appellants:

        Thomas C. Honzel, Helena, Montana
        Donald E. Maynard, Pro Se, Helena, Montana

        For Respondent:

        Harrison, Loendorf & Poston, Helena, Montana
        John Poston, Helena, Montana

---

                    Submitted on briefs: January 6, 1983

                              Decided: February 18, 1983

Filed:  FEB 18 1983

        _Ethel M. Harrison_
_____
                    Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

The District Court of the First Judicial District issued on February 2, 1982, a partial summary judgment declaring the January 3, 1969, tax deed issued to Donald E. Maynard, to be void ab initio. Then, on September 14, 1982, the same court issued a final judgment dismissing Maynard's alternative claim of adverse possession and returning the tax deed property to its previous owners. Maynard now appeals these judgments.

Prior to 1953, all surface and mineral rights, title and interests in Placer Survey No. 1198 were owned by the Robert S. Hale Estate. On April 20, 1953, Placer Survey No. 1198 was sold to B.F. Otten. The deed provided for the following reservation:

> " . . . subject to the reservation in the grantor, the heirs and devises of Robert S. Hale, their successors and assigns of all mineral in said property with the rights of said parties, their lessees, successors and assigns to enter in and upon said property, with right of egress and ingress to explore for mining and mine and operate the same, extract therefrom and sell any ore and mineral, the right to erect buildings and equipment thereon and remove the same with the right of the use of surface therefor without any hindrance or restraint on the part of the grantees or their successors and free from any claim for damage resulting from such mining operations and all water rights pertaining to these mining claims are reserved by the grantor;
>
> " . . .
>
> " . . . The grantees shall pay all taxes on the above described property for the year 1953 and thereafter, both on the surface, and upon the mineral . . . " (Emphasis supplied)

On December 11, 1956, the Merritts purchased Otten's surface rights interest in Placer Survey No. 1198. They have since paid all taxes assessed on that property in their names. However, in 1957, Lewis and Clark County commenced assessing the surface and mineral rights separately.

2

Therefore, the Merritts paid only the taxes assessed against their surface rights.

The taxes assessed against the reserved mineral rights interest went unpaid. The county thereafter "struck off" the mineral interest and attempted to sell it. Defendant Maynard purchased that interest December 1968. Lewis and Clark County issued Maynard the tax deed on Janaury 3, 1969.

Maynard's interest came to light in August, 1979, when the Merritts attempted to sell their interest in Placer Survey No. 1198. On February 19, 1981, Sproul A. McGuinness, as heir to the Robert Hale Estate, and the Merritts brought this suit to quiet title to the property. A lis pendens was filed in the office of the Lewis and Clark County Clerk and Recorder on that same day.

Pre-trial discovery by attorneys for all parties narrowed the scope of the issues. On August 19, 1981, plaintiffs, pursuant to Rule 34, Montana Rules of Civil Procedure, requested Lewis and Clark County to produce the affidavit required by section 15-18-204, MCA. The affidavit is the sole proof that notice of the sale of the property for delinquent taxes was given the owner of the property sold. Section 15-18-202, MCA. The county responded September 8, 1981, stating:

> " . . . the affidavit of notice . . . was not filed in the office of the Clerk and Recorder and that, therefore, Defendant is unable to produce the same."

Plaintiffs moved for summary judgment on January 11, 1982. Following a January 27, 1982 hearing on that motion, the District Court held Maynard's tax deed to be void for failure to file the affidavit, pursuant to section 15-18-204, MCA. The court also denied, as premature, plaintiff's motion

3

for summary judgment on Maynard's counterclaims of adverse possession, laches and the statute of limitations.

At defendant's request, his second attorney withdrew as counsel on April 10, 1982. Maynard has since proceeded pro se.

A hearing on Maynard's counterclaims, specifically that of adverse possession, was held September 1, 1982, before the court sitting without a jury. Defendant's daughter testified that in 1975 she assisted her father in digging holes along the creek with a posthole digger and panning that soil for gold. A small storage shed was constructed on the property in 1978 and a larger residence was constructed in 1980. A neighbor, Earl Lutzenhizer, testified to seeing Maynard pan for gold on the property for three years prior to September 1, 1982. Mr. Maynard himself testified that he had been ". . . testing for gold on that property since 1975." Excavating commenced in 1979 and buildings were constructed in 1978 and 1980. The mine allegedly became commercial and operating in 1979.

Clella Merritt testified for plaintiffs that the Merritts first became aware of mining activities on their property on August 29, 1979. Then on March 23, 1980, Merritts learned that Donald Maynard had constructed a storage shed on their property. Jay Merritt testified that he saw no signs of mining activity on the property prior to 1976. He was out of state from 1978 to 1980 and first noticed mining excavations in 1980 or 1981. Finally, Gil Alexander, an ex-resident of the area with training in geological research and mining exploration, testified that although he had been on the property for recreational purposes many times previous to 1977, he had never noticed any evidence of mining activity.

4

The District Court concluded in its judgment dated September 14, 1982 that: "Defendant's occupancy and possession of the property was such in character and length of time that it failed to create a right by adverse possession." Further, the surface rights of Placer Survey No. 1198 were held to belong to Robert Earl Merritt, Clella Merritt and the Merritt Ranch Company; the mineral interests of Placer Survey No. 1198 were held to belong to Sproul A. McGuinness and the other heirs of the Robert Hale Estate; Donald Maynard's claim of adverse possession was dismissed.

In his appeal of that judgment, Donald Maynard presents these issues:

1. Did the District Court err in declaring Defendant/Appellant Donald E. Maynard's tax deed from Lewis and Clark County void?

2. Did the District Court err in allowing the owner of the surface rights of Placer Survey No. 1198, Merritt Ranch, to prosecute this quiet title action by joining Sproul A. McGuinness, an heir of the Robert Hale Estate?

3. Did defendant's second attorney exceed his authority when he signed the stipulation allowing Sproul A. McGuinness to bring this suit?

4. Did plaintiff's attorney follow the proper procedures for a quiet title action as required by sections 15-18-401 and 15-18-402, MCA?

5. Were defendant's due process rights violated when his initial attorney refused to request a jury trial?

6. Did the District Court err in rewarding Merritts since they had allegedly disregarded earlier opportunities to pay the taxes on the mineral interest?

We find no abuse of discretion and affirm the decision of the District Court.

Section 15-18-204, MCA, states in part:

"Affidavit of notice. No deed of the property sold at a delinquent tax sale shall be issued by the county treasurer to the purchaser of the property until the proof of service of notice of application for tax deed has been filed with the county clerk and recorder as required by 15-18-202."

The provisions of section 15-18-204, MCA are mandatory and prohibitory. They specifically prohibit the issuance of a tax deed by the county treasurer until after such an affidavit has been filed. King v. Rosebud County (1981), _____ Mont. _____, 631 P.2d 711, 38 St.Rep. 1145. No affidavit was filed in this case. Therefore, the tax deed issued to Maynard by the Lewis and Clark County Treasurer is void ab initio.

Further, there was no open, notorious, exclusive, adverse, continuous or hostile occupation or possession of the property by Maynard for five years prior to the date the complaint was filed, February 19, 1981. Section 70-19-401, MCA; Scott v. Weinheimer (1962), 140 Mont. 554, 374 P.2d 91. Neither has Maynard shown "actual possesion of the mineral interest by openly operating the mine" for the same five year period. Lehfeldt v. Adams (1956), 130 Mont. 395, 400, 303 P.2d 934, 937. Therefore, Maynard has not acquired title to the mineral interest of Placer Survey No. 1198 through adverse possession.

Maynard's remaining contentions are meritless. Attorneys for all parties stipulated that Sproul A. McGuinness was an heir of the Robert Hale Estate and thus vested with sufficient title and standing to bring the quiet title action. Richard Pyfer signed the February 3, 1982 stipulation as attorney for Maynard. Maynard had signed a Notice of Change of Attorney October 27, 1981, designating Pyfer's firm as his new counsel of record. Therefore, Pyfer

6

was acting within the scope of his authority when he signed the stipulation.

The procedures for a quiet title action found in sections 15-18-401 and 15-18-402, MCA, are procedures to be followed when a purchaser of a property tax deed wishes to quiet his title to that property as against anyone else. They are procedures Maynard would have followed had he sought to quiet his title to the mineral interests. They do not apply to quiet title actions by the true owner of the property.

Actions to quiet title are actions in equity. R. McClintock, Handbook of the Principles of Equity, §192, p. 520 (2d ed. 1948). Judges may enpanel juries for equity actions; however, they are not bound to do so. Downs v. Smyk (1982), ____ Mont. ____, 651 P.2d 1238, 39 St.Rep. 1786. Defendant was not entitled to a jury trial. His due process rights were not violated when his attorney failed to request a jury trial.

Finally, Merritts were not "rewarded". They received only that to which they were legally entitled, the surface rights to Placer Survey No. 1198.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

7